UNITED STATES ex rel. BOULBOL v. FIELDING.

(District Court, E. D. New York. December 31, 1909.)

1. HABEAS CORPUS (§ 23*)—IMMIGRATION LAWS—ALIENS NOT DESTINED FOR UNITED STATES—DEPORTATION.

The immigration laws (Act Cong. Feb. 20, 1907, c. 1134, 34 Stat. 898 [U. S. Comp. St. Supp. 1909, p. 447]) apply only to aliens applying for landing within the United States as their destination, so that an alien listed on a ship's manifest and ticketed for Halifax, on being refused admission to enter Canada, not having disavowed any intention to land there, and not having questioned the jurisdiction of the dominion government in direct- ing his deportation, was not entitled to his release on habeas corpus from the custody of the officers of the steamship while temporarily in port in the United States pending his deportation to the place from whence he came in accordance with the direction of the Dominion.

[Ed. Note.—For other cases, see Habeas Corpus, Dec. Dig. § 23.*]

2. ALIENS (§ 57*)—IMMIGRATION—MANIFEST.

Where an alien endeavored in Europe to secure passage to New York, and was told that, if he purchased a ticket to Halifax and wished to con- tinue to New York, he could do so without extra charge, and was there- upon ticketed by the steamship officers and entered on the manifest as destined to Halifax, N. S., when, in fact, his destination was New York, such acts by the officers of the steamship would constitute a violation of Act Cong. Feb. 20, 1907, c. 1134, § 12, 34 Stat. 901 (U. S. Comp. St. Supp. 1909, p. 453), requiring the master of a vessel to deliver to the immigration officers at the port of arrival a list or manifest made at the time and place of embarkation, stating the name, nationality, etc., and the final destin- ation, as well as the seaport for landing in the United States of each alien destined to land therein.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 57.*]

3. HABEAS CORPUS (§ 116*)—COSTS.

Where a writ of habeas corpus was sued out by an alien retained by the officers of a steamship pending deportation under an order of the Do- minion of Canada while the ship was temporarily in New York on her re- turn voyage to the country from which the alien embarked, the cost of the alien's detention under the writ must be paid by the steamship company before the alien can be redelivered to it on dismissal of the writ, though the costs may be recovered by the steamship company from the petitioner.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 118; Dec. Dig. § 116.*]

Habeas corpus by the United States, on the relation of Yorgaky Boulbol, against W. J. Fielding, captain of the steamship Napolitan Prince. Writ dismissed.

Carrell & Henkel, for petitioner.

Convers & Kirlin (Russell T. Mount, of counsel), for respondent.

CHATFIELD, District Judge. The petitioner is an alien 17 years old, whose parents are said to be living in Brooklyn at the present time. He was taken as a passenger upon the steamer Napolitan Prince, at the Hook of Holland, and was given and accepted a ticket for his passage to Halifax, N. S. He was entered upon the manifest accord- ingly, and at Halifax was landed by the steamship authorities. The alien claims that he endeavored in Europe to secure passage to New York, and was told that if he had purchased a ticket to Halifax, and

wished to continue on to New York, he could do so without extra charge.

Assuming that his statement as to this is true, it justifies the entering of his name upon the manifest, and would justify the Canadian authorities in considering whether he should be allowed to land at Halifax, if he so desired. On the other hand, it would seem that if the alien had stated these facts to the examiner in Halifax, and had disavowed any desire to land in Halifax, a determination as to his deportation to Europe might not have been necessary, inasmuch as, while subject to the immigration laws of the Dominion, he might not have been treated as an alien attempting to enter the Dominion, but rather as an alien whose final destination was a port in the United States, and as to whom Halifax was a port of call or re-embarkation rather than the terminus of his journey. But such action on the part of the immigration authorities at Halifax would presumably involve the steamship company in difficulties at one port or the other. The laws of the United States (section 2, Act Feb. 20, 1907, c. 1134, 34 Stat. 898 [U. S. Comp. St. Supp. 1909, p. 448]) cover the exclusion of aliens having a dangerous contagious disease. Sections 8 and 18 of the same act provide for the landing of aliens only in accordance with the provisions and regulations of the immigration laws, and section 19 requires the vessels to take back such aliens brought here in violation of law. Section 12 requires the master to deliver to the immigration officers at the port of arrival a list or manifest made at the time and place of embarkation, stating the name, nationality, etc., and the final destination, as well as the seaport for landing in the United States, and a fine is provided for failure to make such a list. Under section 9 aliens ascertainably likely to be excluded cannot be accepted for passage if such aliens intend to come to the United States.

The alien in question, after having been ordered deported by the authorities of the Dominion at Halifax, was taken upon board the vessel and brought to New York, and held on board the vessel at a pier in Brooklyn during the stay of the steamer here. No attempt was made to offer him for inspection under the United States laws or to send him to Ellis Island, and the manifest of the vessel shows that he was a passenger for Halifax. He was reported to the immigration authorities here in company with a number of others as being on board the vessel as a person excluded by the Dominion of Canada and in process of deportation to Holland. He has been brought before the court upon a writ of habeas corpus, and is now temporarily detained pending a determination of his right to apply for entry in the United States and for original examination here.

So far as the alien himself is concerned, it would seem that his acquiescence in being listed and given a ticket for Halifax, and at that port failing to disavow any intention to enter Canada, or to question the jurisdiction of the government of the Dominion in treating him as an alien desiring to enter the Dominion, would be sufficient to justify the continuation of his deportation under the order of the Canadian government.

From a standpoint of comity, the action of Canada could be made the basis of a decision by the immigration authorities at this port that

he should not be recognized as an alien from the European port desiring to enter the United States. Otherwise any such person intending to land at Halifax might, if excluded by Canada, thereafter change his mind and ask to be allowed to enter the United State But, if the ground of his detention and deportation from Halifax was included in the statute of exclusion of the United States, it would seem that the doctrine of comity between the two governments should be sufficient, so that no interference in the execution of the laws of the Dominion should be had. Especially would this seem to be justified in that the United States government maintains a medical inspector at Halifax, who joins in the examination of the aliens there, and his opinion, while not that of an officer having jurisdiction at the time, is nevertheless a guaranty against unintentional injustice. The statutes in question apply to aliens arriving by water at any port within the United States; but only those whose destination is within the United States, or who apply for landing within the United States, would be subject to the other provisions of law governing such landings. It is expressly provided by section 16 that temporary removal for inspection shall not be considered a landing in the United States.

Any such alien not reported to the immigration authorities as intending to land, or not presenting himself under the terms of the immigration statutes, cannot demand the benefits of those statutes, unless it appears that he is detained within the jurisdiction of the United States, without authority of any law of the United States or of any nation whose authority can be considered as properly exercised by the vessel and its officers.

On the other hand, if such a condition of affairs existed, and such action on the part of the steamship company, as the alien alleges, occurred in this case, it was apparently a violation (even if not designed) of the statutes of the United States, and some procedure should be adopted by which similar situations cannot arise in the future. So far as the present application is concerned, the writ of habeas corpus will be dismissed and the alien returned to the steamship. This course is followed with less reluctance as the immigration authorities at this port have from the standpoint of fairness conducted a full examination of the alien and declared him ineligible to enter, under the provisions of section 2.

The cost of the alien's detention under the writ of habeas corpus must be paid by the steamship company before the alien can be redelivered to them, but such costs may be recovered from the petitioner for the writ.